UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

FILED
MAR - 8 2013
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § |
| v. | § CRIM NO. MO-12-CR-123-RAJ |
| DARLENE AURELIA BISHOP, | § |
| Defendant. | § |

**VERIFIED PETITION OF CASH FLOW FINANCIAL, LLC
PURSUANT TO RULE 32.2 OF THE FEDERAL RULES
OF CRIMINAL PROCEDURE AND 21 U.S.C. §853(n)**

I.  PETITIONER'S RIGHT, TITLE AND INTEREST

   A. **Petitioner's Appointment as Receiver for Cash Flow by United States District Court for the Eastern District of Michigan, Southern Division**

   1.   Phillip S. Stenger, as the Court-appointed receiver ("**Receiver**") for the interests and assets of Cash Flow Financial, LLC, a Michigan Limited Liability Company ("**Cash Flow**"), by and through counsel, submits this Petition to show that Cash Flow's interest in the funds the Government seeks to forfeit is superior to any interest of defendant Darlene Aurelia Bishop ("**Bishop**"). The interests and assets of Cash Flow were placed into receivership on March 10, 2011 in the case of *Commodity Futures Trading Commission* ["**CFTC**"] *v. Alan James Watson, Michael Potts and Cash Flow Financial LLC*, Case No. 11-CV-10949 (the "**Receivership Action**"), in the United States District Court for the Eastern District of Michigan, Southern Division.

1

2. By Statutory Restraining Order (the "**SRO**") entered in the Receivership Action on March 11, 2011, a copy of which is attached as **Exhibit A** and incorporated herein by reference, the Receiver was appointed by the Court as Temporary Receiver for the assets of Cash Flow with the full powers of an equity receiver. The SRO in pertinent part authorized and directed the Receiver to assume full control of Cash Flow; to take exclusive custody, control and possession of all funds, property, mail and other assets of, in the possession of, or under the control of Cash Flow, wherever situated, with full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys and effects of Cash Flow; to collect all money owed to Cash Flow; and to initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of Cash Flow or to carry out my duties pursuant to the SRO.[1] The mandates of the SRO were incorporated by reference in a Consent Order of Preliminary Injunction with Asset Freeze entered by the Receivership Court on March 30, 2011, and in a Consent Order entered by the Receivership Court on May 3, 2011, modifying the SRO, copies of which are attached as **Exhibit B** and **Exhibit C**, respectively, and incorporated herein by reference. The Receiver was ordered to collect and protect all available funds and assets of Cash Flow for the eventual distribution of funds to the claimants. To date approximately 975 potential claimants have been identified with losses of approximately $31,865,259.61. *See* Receivers Second Report to Court, attached hereto as **Exhibit D**. Pursuant to the mandate received from the Receivership Court, the Receiver has undertaken to recover funds which Darlene A. Bishop ("**Bishop**") obtained from Cash Flow through her fraudulent activity.

---

[1] Exhibit B, Sections IV.B.1, IV.B.2, IV.B.7 and IV.B.8, respectively.

## II.     CIRCUMSTANCES AND TIME OF PETITIONER'S ACQUISITION OF RIGHT, TITLE AND INTEREST

### A. Bishop's Fraud and the Court's Judgment

3. As this Court found in *Cash Flow Financial, LLC v. Bishop, et. al.,* Case No. 09-cv-00029-RAJ (W.D. Texas), Cash Flow was a victim of Bishop's fraud. Bishop made false material representations to Cash Flow that it could lease large bank accounts from lessors and buy and sell European notes on the European market using Proof of Funds ("POF") documents from the lessor's bank confirming the existence of the leased bank accounts if Cash Flow agreed to pay the leasing fees. Additionally, Bishop made false material representations to Cash Flow that the full amount of leasing fees wired to Bishop by Cash Flow would be forwarded to the lessor of the bank accounts.

4. In reliance on Bishop's representations, Cash Flow's then principal, A.J. Watson ("**Watson**"), wired more than $4.85 million in leasing fees to Bishop, including, in pertinent part, leasing fees of $2.6 million wired by Watson and his business partner, Alma Perez, to Bishop on December 3, 2008. Cash Flow's reliance upon Bishop's representations was justified based upon the characteristics, abilities, and appreciation of the circumstances and facts surrounding the transaction of Cash Flow's officer and that there were no red flags indicating that Cash Flow's reliance was unwarranted. Further, Cash Flow took action as soon as it believed its reliance upon Bishop's representations might be unwarranted.

5. None of Cash Flow's money was ever sent to a lessor of bank accounts and Cash Flow never received any POF documents from Bishop with respect to the $2.6 million wired to Bishop on December 3, 2008. Instead, Bishop kept $800,000 of that $2.6 million for herself and transferred the rest to other individuals.

6. On March 27, 2009, Cash Flow brought suit against Bishop and these other individuals. After a bench trial, this Court issued a final judgment in favor of Cash Flow and against Bishop on September 21, 2011, in the amount of $1,225,000.00 (the "**Final Judgment**"). A true copy of the Final Judgment is annexed hereto as **Exhibit E**, and incorporated herein by reference.

7. To preserve its claim against any and all of Bishop's property, Cash Flow filed an abstract of the judgment in Ector County, Texas, on September 30, 2011 (the "**Abstract of Judgment**"). A true copy of that Abstract of Judgment is attached hereto as **Exhibit F**, and incorporated herein by reference.

### B. Tracing the Funds Bishop Used to Purchase 2901 Palo Verde

8. Using money obtained from Cash Flow by fraud, Bishop had purchased certain real property commonly known as 2901 Palo Verde Drive, Odessa, Texas (the "**2901 Palo Verde Property**") on December 8, 2008. This is shown in the Bishop's financial records and confirmed by the Government's Verified Complaint for Forfeiture ("**Verified Complaint**") in its civil case for forfeiture of the funds which Bishop obtained from the sale of the 2901 Palo Verde Property in the case *United States of America v. $579,766.05, more or less, etc.*, Case No. 12-cv-021-RAJ (W.D. Texas). A copy of the Verified Complaint is attached hereto as **Exhibit G**.

9. Additionally, to trace the funds which Bishop used to purchase the 2901 Palo Verde Property, Petitioner has obtained expert testimony from Alice T. Romsek, C.P.A. Ms. Romsek filed an expert report in the civil forfeiture action, which is attached hereto as **Exhibit H,** and incorporated herein by reference. As shown in the Report and through the documentary evidence detailed below, the funds Bishop received from Cash Flow on December 3, 2008, are directly traceable to the funds used to purchase the 2901 Palo Verde Property.

    a. Charter One Bank's confirmation of Cash Flow's transfer of the above-referenced $2.6 million to Bishop on December 3, 2008. See **Exhibit I**.

    b. Bank of America, N.A. ("**BOA**") statements from Darlene Bishop dba Paradize Funding's escrow account (Escrow Acct. No. xxxx5361), and from Darlene Bishop's personal savings account (Savings Acct. No. xxxx6261) (collectively, the "**Bishop Bank Records**") documenting that the funds she received from Cash Flow on December 3, 2008 are directly traceable to the funds used to purchase the subject property. See **Exhibit J**.

10. More specifically, the Bishop Bank Records document:

    a. The incoming $2.6 million wire transfer from Cash Flow's Charter One Bank account into Bishop's Escrow Acct. No. xxxx5361 on December 3, 2008;

    b. The corresponding $800,000 wire transfer out of Bishop's Escrow Acct. No. xxxx5361 into Bishop's Savings Acct. No. xxxx6261 on December 3, 2008, and;

    c. The cash withdrawal (counter debit) of $672,088.31 out of Bishop's Savings Acct. No. xxxx6261 on December 9, 2008.

**C. Bishop's Sale of the 2901 Palo Verde Property**

11. In late 2011, Bishop entered into a residential contract for the sale of the 2901 Palo Verde Property for a sales price of $640,000. (Verified Complaint, p. 5).

12. On January 18, 2012, the Receiver's Texas counsel received a demand from Bishop's counsel that Cash Flow partially release its lien on the 2901 Palo Verde Property so it could be sold. A copy of the demand is attached hereto as **Exhibit K** and incorporated herein by reference.

13. On January 18, 2012, while the Receiver was weighing his options with respect to responding to the Bishop's demand, the Receiver's Michigan counsel was contacted by Austin M. Berry, Assistant U.S. Attorney for the Western District of Texas, Midland ("**AUSA Berry**"), who was seeking the Receiver's assistance in obtaining information concerning the contract and closing, so the Government could take control of the proceeds when Bishop sold the 2901 Palo Verde Property. AUSA Berry specifically requested that the Receiver release the Receivership Estate's lien against the 2901 Palo Verde Property so that the sale could go forward. The Receiver's Michigan counsel asked how the Receivership Estate's interest in the sale proceeds would be protected if the Receiver agreed to release the lien. In a follow-up e-mail to Receiver's counsel on January 18, 2012, AUSA Berry asked that the Receiver we call Mary Nelda Valadez, Assistant United States Attorney, Asset Forfeiture Section, San Antonio ("**AUSA Valadez**"), and "engage in a dialogue about how we can make this work best for the victims that [the] Receiver represents."

14. On January 19, 2012, the Receiver spoke with AUSA Valadez, emphasizing that if he agreed to release the Receivership Estate's lien against the 2901 Palo Verde Property, his primary concern and focus was how the sale proceeds, once seized by the Government, would get back to the Receivership for distribution to the Receivership Estate's victims. AUSA Valadez outlined the civil/criminal forfeiture process, and stated that the Receiver would file a claim in the civil forfeiture proceeding, which would most likely be recognized as long as the funds were not going to be distributed to people who facilitated Ms. Bishop's fraud against Cash Flow.

15. At the specific request of AUSA Berry, the Receiver agreed to and did execute a Partial Release of Judgment Lien ("**Partial Release of Lien**") on January 19, 2012, a copy of which is attached hereto as **Exhibit L**, with the understanding that the Government would not

6

oppose the Receiver's claim to the sale proceeds in the Government's forfeiture proceedings, whether civil or criminal in nature. But for this representation, the Receiver would not have agreed to release his lien on the property because Ms. Bishop could not sell the property until the Receiver released his lien, and therefore the lien was the Receiver's primary leverage to obtain payment for his judgment against Ms. Bishop.

16. The Receiver's Texas counsel determined that a closing for the sale of the 2901 Palo Verde Property was to be held on February 8, 2012 at the offices of Ector County Abstract and Title in Odessa, Texas.[2] With information provided by Michigan counsel for the Receiver regarding the specific closing date and time, the Government obtained a federal seizure warrant and the $579,766.05 net proceeds from that sale (the "**Respondent Property**") were seized at the closing by a law enforcement agent pursuant to a Federal seizure warrant.[3]

17. The Findings of Facts and Conclusions of Law in the Bishop Case established that Bishop was liable to Cash Flow for fraud and unjust enrichment in the amount of $1.225 million. See **Exhibit M**.[4] When an individual obtains property through fraud, the rightful owner of the property maintains an equitable lien in the property wrongfully taken through fraud. *See generally In re Gamble-Ledbetter*, 419 B.R. 682, 701 (Bankr. E.D. Tex. 2009); *Hall v. Miller*, 147 S.W.2d 266, 270 (Tex. Civ. App.—San Antonio 1941, writ dism'd judgm't cor.). As such, Cash Flow never lost its property interest in the funds which were transferred to Bishop. As can be traced through the Bishop Bank Records, the money wired from Cash Flow represents the funds used to purchase the 2901 Palo Verde Property, and the proceeds of the subsequent sale of that property are the respondent property in the civil proceeding.[5]

---

[2] Exhibit G, pg. 5.
[3] Exhibit G, pp. 5-6.
[4] Exhibit M, Paragraph III. Conclusion.
[5] See Exhibits H, I and J.

18. Additionally and as further evidence of the Receivership's ownership interest in the Respondent Property, the Final Judgment in the Bishop Case was used to create a valid judgment lien as filed in the Receiver's Abstract of Judgment.[6] Under Texas law, an abstract of judgment constitutes a lien on and attaches to any real property of the defendant that is located in the county in which the abstract is recorded and indexed. Tex. Prop. Code Ann. § 52.001 (Vernon). However, the judicial lien created by a judgment does not fix an ownership interest when the filing party has an equitable interest by virtue of another's fraud, rather the judicial lien recognizes and is co-extensive with the injured parties' existing interest in the property. *In re Gamble-Ledbetter*, 419 B.R. at 701.

19. As a result of the fraudulent action of Bishop as evidenced by the Final Judgment, Findings of Fact and Conclusions of Law, and the Abstract of Judgment, the Receivership has an ownership interest in the property that the government seeks to forfeit. Cash Flow's interest is prior to the interest of Bishop, and therefore prior and superior to any interest that could be forfeited.

20. The legal right, title and interest of the Receivership in the Respondent Property renders the forfeiture of the Respondent Property invalid because the right, title, or interest was vested in the Receivership and was superior to any right, title or interest of the Bishop at the time of the acts which gave rise to the forfeiture pursuant 21 U.S.C. §853. Moreover, it would be inequitable to allow the government to induce the Receiver to execute the Partial Release of Lien, on the express representation that the funds flowing from the lien would be paid to the Receivership as part of the forfeiture proceeding and then allow the Government to ignore obligations to pay such funds to the Receivership.

---

[6] See Exhibit F.

WHEREFORE, petitioner respectfully requests that the Government be denied forfeiture of the Respondent Property, and that instead possession and ownership be awarded to Phillip S. Stenger, as Court-appointed Receiver for Cash Flow Financial, LLC, for its distribution to innocent investors in Cash Flow.

By: _____
Aaron M. Dorfner
State Bar No. 24040824
adorfner@cbtd.com

**COTTON, BLEDSOE, TIGHE & DAWSON, P.C.**
A Professional Corporation
P. O. Box 2776
Midland, Texas 79702
(432) 684-5782; (432) 682-3672 (Fax)

ATTORNEYS FOR PETITIONER
PHILLIP S. STENGER,
As Court-appointed Receiver for
CASH FLOW FINANCIAL, LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 8th day of March, 2013, a true and correct copy of the above and foregoing instrument has been sent by certified mail, return receipt requested, to the following attorneys of record:

Ms. Diana Cruz-Zapata
Assistant U. S. Attorney
Chief, Asset Forfeiture Section
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

_____
Aaron M. Dorfner

## DECLARATION OF REPRESENTED PARTY

STATE OF MICHIGAN )
)
COUNTY OF KENT )

I, **Phillip S. Stenger**, in my capacity as Court Appointed Receiver for the assets of Cash Flow Financial, LLC, hereby declare under penalty of perjury that I have authorized Aaron M. Dorfner, Esq., of Cotton Bledsoe Tighe & Dawson, PC, P.O. Box 2776, 500 West Illinois, Suite 300, Midland Texas 79701-4337, to represent Cash Flow Financial, LLC, in this proceeding, and that I have fully reviewed the foregoing petition, including any attachments thereto, and that the petition and its attachments are, to the best of my knowledge, information and belief, true and correct in every respect.

Phillip S. Stenger, as Court Appointed Receiver for the Assets of Cash Flow Financial, LLC, and not individually or personally.

Subscribed and sworn to before me this 7th day of March, 2013.

Andrea N. Sutter
Notary Public, Kent County, MI
My Commission Expires: June 29, 2017.

Andrea N Suttner
Notary Public of Michigan
Kent County
Expires 06/29/2017
Acting in the County of Kent