**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, §<br>§<br>§<br>    Plaintiff, §<br>§<br>  v. §<br>§<br>§<br>DARLENE AURELIA BISHOP, §<br>§<br>§<br>    Defendant. §<br>§ | CRIM NO. MO-12-CR-123-RAJ |

## <u>CLAIMANT PHILLIP S. STENGER'S, AS COURT-APPOINTED RECEIVER FOR CASH FLOW FINANCIAL, LLC, MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES Phillip S. Stenger, in his capacity as Court-appointed Receiver for the assets of Cash Flow Financial, LLC ("**Receiver**"), by appointment issued on March 11, 2011 by the United States. District Court for the Eastern District of Michigan, in the case of *Commodity Futures Trading Commission v. A.J. Watson, Michael Potts, and Cash Flow Financial, L.L.C*, Case No. 11-CV-10949, and files this his Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, arguing that legal right, title and interest of the Receivership in the Respondent Property renders the forfeiture of the Respondent Property invalid because the right, title, or interest vested in the Receivership was superior to any right, title or interest of criminal Defendant Darlene A. Bishop ("**Bishop**") because it was obtained by Bishop through fraud at the time of the acts which gave rise to the forfeiture pursuant 21 U.S.C. §853.  Therefore, the Respondent Property should not be forfeited, but should be ordered returned to Cash Flow.

1

254384

# I.
# BACKGROUND

### A.  Procedural History

In the present case, ("**Criminal Forfeiture**") the United States filed its Motion for Preliminary Order of Forfeiture and Money Judgment (Dkt. No. 62), on January 15, 2013 seeking, in part,  forfeiture of $579,766.05, More or Less, in U.S. Currency, (the "**Respondent Property**").  See **Exhibit A**.[1]  This currency represents proceeds from the sale of real property commonly known as 2901 Palo Verde Drive, Odessa, Texas (the "**2901 Palo Verde Property**"). This Court entered its Preliminary Order of Forfeiture (Dkt. No. 63) on January 25, 2013.  See **Exhibit B**.  Receiver filed his Petition of Cash Flow Financial, LLC, Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. §853(n) (Dkt. No. 66) on March 8, 2013. See **Exhibit C**.[2]

Prior to the United States attempt to forfeit the Respondent Property in the current proceeding, the United States filed its Verified Complaint for Forfeiture (Civil Forfeiture, Dkt. No. 2) on March 8, 2012 seeking forfeiture of the Respondent Property through a civil proceeding ("**Civil Forfeiture**"), claiming that the Respondent Property was subject to forfeiture pursuant to Title 18 U.S.C. §981.  See **Exhibit D**.  On April 26, 2012, Phillip S. Stenger, as Court-appointed Receiver for Cash Flow Financial, LLC, filed his Claim of Interest in Seized Property (Civil Forfeiture, Dkt. No. 10).  See **Exhibit E**.  On May 17, 2012, the Receiver filed his Answer to Verified Complaint for Forfeiture (Civil Forfeiture, Dkt. No. 12).  See **Exhibit F**. On December 18, 2012, the United States filed its Motion for Partial Default Judgment of Forfeiture and Memorandum of Law in Support Thereof (Dkt. No. 15), seeking to remove any

---

[1] Exhibit A is incorporated herein by reference, and all subsequent exhibits referred to hereinafter are similarly incorporated by reference, as if fully set forth herein.
[2] Exhibit C, the Petition of Cash Flow Financial, LLC, Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. §853(n), and all exhibits to the Petition are incorporated as if fully set forth herein.

254384

claim of Bishop and her husband, John Bishop (collectively, the "**Bishops**"), and any and all other potential claimants to the Respondent Property, excluding the Receiver's claim. See **Exhibit G**. On January 4, 2013, this Court signed an order of Partial Default Judgment of Forfeiture (Civil Forfeiture, Dkt. No. 17), finding that any and all right, title, and interest of the Bishops in the Respondent Property and "all right, title, and interest of any and all other potential claimants of the Respondent Property, excluding Phillip S. Stenger, Receiver for Cash Flow Financial, LLC, be and hereby is, held in default and FORFEITED to the United States of America." See **Exhibit H**. However, upon motion by the United States of America, this Court abated the Civil Forfeiture in favor of the Criminal Forfeiture by its Order to Stay Civil Proceedings (Civil Forfeiture, Dkt. 21). See **Exhibit I**.

     B.  **The Receivership**

     The interests and assets of Cash Flow Financial, LLC ("**Cash Flow**") were placed into receivership on March 10, 2011 in the case of *Commodity Futures Trading Commission* ["**CFTC**"] *v. Alan James Watson, Michael Potts and Cash Flow Financial LLC*, Case No. 11-CV-10949 (the "**Receivership Action**"), in the United States District Court for the Eastern District of Michigan, Southern Division (the "**Receivership Court**"). A copy of the CFTC's Complaint in the Receivership Action is attached hereto as **Exhibit J**. By Statutory Restraining Order (the "**SRO**") entered in the Receivership Action on March 11, 2011, a copy of which is attached as **Exhibit K** and incorporated herein by reference, Phillip S. Stenger was appointed as Temporary Receiver for the assets of Cash Flow with the full powers of an equity receiver. The SRO in pertinent part authorized and directed the Receiver to assume full control of Cash Flow; to take exclusive custody, control and possession of all funds, property, mail and other assets of, in the possession of, or under the control of Cash Flow, wherever situated, with full power to sue

254384

for, collect, receive and take possession of all goods, chattels, rights, credits, moneys and effects of Cash Flow; to collect all money owed to Cash Flow; and to initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of Cash Flow or to carry out his duties pursuant to the SRO.[3]  The mandates of the SRO were incorporated by reference in a Consent Order of Preliminary Injunction with Asset Freeze entered by the Receivership Court on March 30, 2011, and in a Consent Order entered by the Receivership Court on May 3, 2011, modifying the SRO, copies of which are attached as **Exhibit L** and **Exhibit M**, respectively, and incorporated herein by reference.  The Receiver has been ordered to collect and protect all available funds and assets of Cash Flow for eventual distribution to victims of the Ponzi scheme which is the subject of the Receivership Action. *See* Receiver's Second Report to Court, attached hereto as **Exhibit N**.

The Receiver, in accordance with his directive from the Receivership Court in the Receivership Action, seeks summary judgment in this matter because Cash Flow has a superior legal interest in the Respondent Property as compared to Bishop because the property was obtained by Bishop through by fraud.  As such Cash Flow is entitled to a return of the Respondent Property pursuant to 21 U.S.C. §853.

## II.
## RELEVANT FACTS

Prior to institution of the Receivership Action, Cash Flow filed a civil action against Bishop, and others, styled *Cash Flow Financial, LLC v. Darlene A. Bishop d/b/a Paradize Funding Network, Superior Contracting of the NE Inc., and Linda L. Tortoriello*, Case No. 09-CV-00029 in the United States District Court for the Western District of Texas, Midland-Odessa

---

[3]   Exhibit M, Sections IV.B.1, IV.B.2, IV.B.7 and IV.B.8, respectively.

254384

Division (the "**Bishop Case**"), seeking to recover losses suffered by Cash Flow as a result of Bishop's fraud.[4]

As stated above, the Receiver was appointed in the Receivership Action on March 11, 2011. On March 18, 2011, pursuant to 28 U.S.C. § 754,[5] the Receiver timely filed a "Notice of Receivership," with copies of the Complaint and SRO, with the United States District Court for the Western District of Texas, thereby vesting the Receiver with complete jurisdiction and control of all Receivership assets, real, personal, or mixed property, situated in the Western District of Texas.

On August 5, 2011, Judge Junell issued his Findings of Fact and Conclusions of Law in the Bishop Case. **Exhibit O.**[6] The Findings of Fact and Conclusions of Law held, in summary:

- Bishop made false material representations to Cash Flow that it could lease large bank accounts from lessors and buy and sell European notes on the European

---

[4] The Bishop Complaint (Bishop Case, Dkt. No. 2), alleged, in pertinent part, that Bishop made false material representations to Cash Flow that it could lease large bank accounts from lessors and buy and sell European notes on the European market using Proof of Funds ("**POF**") documents from the lessor's bank confirming the existence of the leased bank accounts; that the bank accounts could be leased if Cash Flow agreed to pay the leasing fees; and that the full amount of leasing fees wired to Bishop by Cash Flow would be forwarded to the lessor of the bank accounts. In reliance on those fraudulent misrepresentations, A.J.Watson wired a total of $4.85 million in leasing fees to Bishop. A bench trial was held in the Bishop Case on January 31, 2011. On February 8, 2011, the Court issued an Advisory Opinion (Bishop Case, Dkt. #148) finding Bishop liable to Cash Flow for common law fraud and unjust enrichment in the amount of $1.225 million.

[5] 28 U.S.C.A. § 754, governing receivers of property in different districts, provides, in pertinent part:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

[6] Exhibit O, Findings of Fact and Conclusion of Law, is incorporated as if fully set forth herein.

market using Proof of Funds ("**POF**") documents from the lessor's bank confirming the existence of the leased bank accounts;

- Bishop made false material representations to Cash Flow that the bank accounts could be leased if Cash Flow agreed to pay the leasing fees;

- Bishop made false material representations to Cash Flow that the full amount of leasing fees wired to Bishop by Cash Flow would be forwarded to the lessor of the bank accounts;

- In reliance on Bishop's representations, Cash Flow wired more than $4.85 million in leasing fees to Bishop: $2.6 million on December 3, 2008 (Deal One); $1 million on December 24, 2008 (Deal Two); and $1.250 million on February 5, 2009 (Deal Three);

- Cash Flow's reliance upon Bishop's representations was justified based upon Watson's characteristics, abilities, and appreciation of the circumstances and facts surrounding the transaction and that there were no red flags indicating that Cash Flow's reliance was unwarranted;

- Cash Flow acted as soon as it believed its reliance might be unwarranted;

- None of Cash Flow's money was ever sent to a lessor of bank accounts and Cash Flow did not receive  any POF documents from Bishop on Deals One and Two; Cash Flow did receive a POF document on Deal Three, but the POF document was a fraud; and

- Bishop, instead, kept $1.225 million for herself and transferred the rest to her co-Defendants in the Bishop Case.

6

254384

On September 21, 2011, a Final Judgment was issued against Bishop and in favor of Cash Flow, in the amount of $1.225 million (the "**Final Judgment**"). See **Exhibit P.**

An "**Abstract of Judgment**" was duly recorded in the Official Public Records of Ector County, Texas, on September 30, 2011, against all Bishop's real property located in Ector County, Texas, including 2901 Palo Verde, Odessa, Texas. See **Exhibit Q**.

According to the Claimant's Designation of Expert Witness and Report of Alice T. Romsek, C.P.A, attached hereto as **Exhibit R**,[7] the documentary evidence proves that the funds Bishop received from Cash Flow on December 3, 2008, are directly traceable to the funds used to purchase the 2901 Palo Verde Drive Property, including:

1. Charter One Bank's confirmation of Cash Flow's transfer of the above-referenced $2.6 million to Bishop on December 3, 2008. See **Exhibit S**.

2. Bank of America, N.A. ("**BOA**") statements from Darlene Bishop dba Paradize Funding's escrow account (Escrow Acct. No. xxxx5361), and from Darlene Bishop's personal savings account (Savings Acct. No. xxxx6261) (collectively, the "**Bishop Bank Records**").  See **Exhibit T**.  The Bishop Bank Records document:

    A.   The incoming $2.6 million wire transfer from Cash Flow into Bishop's Escrow Acct. No. xxxx5361 on December 3, 2008;[8]

    B.   The corresponding $800,000 wire transfer out of Bishop's Escrow Acct. No. xxxx5361 into Bishop's Savings Acct. No. xxxx6261 on December 3, 2008, and;[9]

---

[7] Exhibit R, Claimant's Designation of Expert Witness and all exhibits to that Designation are incorporated as if fully set forth herein.
[8] See also United States of America's Responses to Claimant's First Requests for Admissions, No. 4 & No. 5.
[9] See also United States of America's Responses to Claimant's First Requests for Admissions, No. 6.

254384

C.      The cash withdrawal (counter debit) of $672,088.31 out of Bishop's Savings Acct. No. xxxx6261 on December 9, 2008.[10]

Additionally, the United States admits that the funds used to purchase the 2901 Palo Verde Property are directly traceable to the funds Bishop obtained from Cash Flow. See United States of America's Response to Claimant's First Request for Admissions, attached hereto as **Exhibit U.**

On information and belief, Bishop paid the $672,088.31 in cash withdrawn from Bishop's Savings Acct. No. xxxx6261 to close Bishop's purchase of the 2901 Palo Verde Property referenced above on December 9, 2008. See **Exhibit D** and **Exhibit U**.[11]

On information and belief, in late 2011, Bishop entered into a residential contract for the sale of the 2901 Palo Verde Property for a sales price of $640,000. See **Exhibit D** and **Exhibit U**.[12] On information and belief, a closing for the sale of the 2901 Palo Verde Property was held on February 8, 2012, at the offices of Ector County Abstract and Title in Odessa, Texas. Counsel for the Receiver assisted the Government in obtaining information with regard to the contract and closing.[13] Upon information and belief, with the information provided by counsel for the Receiver, the Government obtained a federal seizure warrant and the Respondent Property was seized at the closing by a law enforcement agent. See **Exhibit D**.[14]

### III.
### SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A

---

[10] See also United States of America's Responses to Claimant's First Requests for Admissions, No. 7.
[11] Verified Complaint for Forfeiture, Paragraph IV-Facts in Support of Forfeiture, p. 5; See also United States of America's Responses to Claimant's First Requests for Admissions, No. 9 & No. 10.
[12] Verified Complaint for Forfeiture, Paragraph IV-Facts in Support of Forfeiture, p. 5.
[13] United States of America's Responses to Claimant's First Requests for Admissions, No. 21.
[14] Verified Complaint for Forfeiture, Paragraph IV-Facts in Support of Forfeiture, p. 5-6.

party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant carries this burden, the burden shifts to the non-movant to show the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  After a summary judgment motion is filed and properly supported, the non-movant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's burden.  *Id.*  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-movant.  *Matsushita*, 475 U.S. at 587; *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  However, the mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant.  *United States v. $705,270.00 in United States Currency,* 820 F.Supp. 1398, 1400 (S.D. Fla.1993).  On a motion for summary judgment where the Court will act as the ultimate trier of fact, the Court may draw inferences from the evidence so long as the inferences do not involve issues of witness credibility or disputed material facts.  *United States v. Real Prop. Known as 1700 Duncanville Rd.*, 90 F. Supp. 2d 737, 740 (N.D. Tex. 2000)(*aff'd, United States v. Real Prop. Known as 1700 Duncanville Rd.*, 250 F.3d 738 (5th Cir. 2001)), *see also Professional Geophysics, Inc. v. Placid Oil Co.,* 932 F.2d 394, 398 (5th Cir. 1991).

254384

# IV.
# LAW AND ARGUMENT

### A.  The Receiver's Standing to Challenge the Civil Forfeiture

A claimant seeking to challenge a forfeiture must "demonstrate an interest in the seized item sufficient to satisfy the Court of its standing to contest the forfeiture."  *United States v. One 1988 Prevost Liberty Motor Home*, 952 F. Supp. 1180, 1203 (S.D. Tex. 1996)(citing *United States v. One 1978 Piper Navajo PA–31 Aircraft*, 748 F.2d 316, 319 (5th Cir.1984) (quoting *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in United States Currency*, 661 F.2d 319, 326 (5th Cir.1981)).  While a claimant need not prove the underlying merit of his claim, the claimant must show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and the prudential considerations defining and limiting the role of the court.  *United States v. $9,041,598.68*, 163 F.3d 238, 245 (5th Cir.1998).  Given the pleadings on file and the merits of his claim, the Receiver has shown sufficient ownership interest in the Respondent Property for standing to pursue this claim.

### B.  The Receiver has a Legal Right, Title, or Interest in the Respondent Property Superior to that of Bishop at the time of the Commission of the Fraud

A Court shall amend the order of forfeiture when a petitioner or claimant has established by a preponderance of the evidence that the petitioner has a legal right, title, or interest in the property sought to be forfeited . . .

> "which renders forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; . . ."

10

254384

21 U.S.C. §853(n).  In forfeiture proceedings the law of the jurisdiction that created the property right determines a petitioner's legal interest, while federal law determines the effect of that interest.  *U.S. v. 2004 Ferrari 360 Modeno*, 902 F. Supp. 2d 944, 953 (S.D. Tex. 2012), citing *U.S. v. Lester,* 85 F.3d 1409, 1412 (9th Cir.1996).

Here, the Receiver had a legal right, title or interest in the Respondent Property superior to that of Bishop at the time of Bishop's fraudulent action under Texas law and as such is entitled to the return of the Respondent Property.

### 1.  Cash Flow's Interest in the Respondent Property

The Findings of Fact and Conclusions of Law in the Bishop Case show that Cash Flow, acting through a corporate officer, A.J. Watson ("**Watson**"), did not have knowledge or reason to believe that its property given to Bishop was connected to or to be used in Bishop's fraudulent activities.  See **Exhibit O**.[15]  Cash Flow did not know of the action which Bishop would take that would give rise to a claim of forfeiture.  See **Exhibit O**.[16]  Additionally, as soon as Cash Flow believed that its reliance upon Bishop's representations was unwarranted, it took action to regain its funds which eventually included filing the Bishop Case.  See **Exhibit O**.[17]

Second, by virtue of the Receiver's appointment, Cash Flow was without knowledge of Bishop's action which gave rise to the forfeiture, regardless of the knowledge or action of Watson.[18]  Cash Flow Financial, LLC is a limited liability company organized under the laws of the State of Michigan.[19]  Under Michigan law, limited liability companies are separate legal entities from their members.  *See* Mich. Comp. Laws § 450.4504(2) ("A member has no interest

---

[15] Exhibit O, Paragraph II. Conclusions of Law, (4) Reliance.

[16] Exhibit O, Paragraph II. Conclusions of Law, (4) Reliance.

[17] Exhibit O, Paragraph II. Conclusions of Law, (4) Reliance.

[18] The Government asserted that "Upon interviewing co-conspirator, Allen Watson, he stated to law enforcement agents that between the dates of on or about December 3, 2008 and February 5, 2009, he contracted with Bishop for the purpose of creating three separate leased funds accounts."  *See* Verified Complaint for Forfeiture in Civil Proceeding.

[19] See Exhibit U, United States of America's Responses to Claimant's First Requests for Admissions, No. 1.

254384

in specific limited liability company property."); *Trident–Allied Assocs., LLC v. Cypress Creek Assocs., LLC,* 317 F.Supp.2d 752, 754 (E.D.Mich.2004) ("[The] Michigan legislature fashioned the limited liability company to be a legal entity distinct from its members."); *Wells v. Firestone Tire & Rubber Co.,* 421 Mich. 641, 364 N.W.2d 670, 674 (1985) ("We recognize the general principle that in Michigan separate entities will be respected."). *Tooling, Mfg. and Technologies Ass'n v. Hartford Fire Ins. Co.* 693 F.3d 665, 672 (C.A.6 (Mich.) 2012).

Further, should the Government claim that Watson was culpable, the argument should fail as irrelevant. The appointment of a receiver removes the wrongdoer from the scene. *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)(citing *McCandless v. Furlaud,* 296 U.S. 140, 159-61, 56 S.Ct. 41, 47, 80 L.Ed. 121 (1935); *Texas & Pacific Ry. v. Pottorff,* 291 U.S. 245, 260–61, 54 S.Ct. 416, 420, 78 L.Ed. 777 (1934); *Southmark Corp. v. Cagan,* 999 F.2d 216, 222 (7th Cir.1993)). Even assuming Mr. Watson was culpable, once a receiver is appointed, the wrongdoer is removed from the scene and the corporation is no longer an "evil zombie" controlled by its wrongdoing officer. *Id.* Once freed from the spell of that officer, the corporation becomes entitled to the return of the moneys—for the benefit not of the evil doer but of innocent investors. *Id.* The distinction between a corporation and its officers or agents is *reinforced* by the appointment of a receiver. *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012), *emphasis added.* A receiver is "the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property of the receivership." *Id.* (citing *Sec. Trust Co. of Austin v. Lipscomb Cnty.,* 142 Tex. 572, 180 S.W.2d 151, 158 (1944)). A receiver acts on behalf of the corporation as a whole, an entity separate from its individual bad actors. *Jones,* 666 F.3d at 966.

12

254384

The Fifth Circuit in *Janvey v. Democratic Senatorial Campaign Committee, Inc., et al.*, 715 F.3d 185, 189-92 (5th Cir. 2013), citing the teachings of the Seventh Circuit in *Scholes*, has similarly ruled that a wrongdoer's knowledge cannot be imputed to the captive corporation under his evil coercion ("[O]nce freed of his coercion by the court's appointment of a receiver, the corporations in receivership, through the receiver, may recover assets that the wrongdoer fraudulently diverted to third parties without receiving reasonably equivalent values.")

### 2.   The Receiver has Equitable Title over the Respondent Property

Under Texas property law, the Receiver retains equitable title over the Respondent Property by virtue of the fraud of Bishop.  The Findings of Facts and Conclusions of Law in the Bishop Case established that Bishop was liable to Cash Flow for fraud and unjust enrichment. See **Exhibit O**.[20]  Under Texas law, when an individual obtains property by fraud, the rightful owner of the property maintains equitable title in the property wrongfully taken through fraud. *See generally In re Gamble-Ledbetter*, 419 B.R. 682, 701 (Bankr. E.D. Tex. 2009)(An individual who obtains funds through a fraudulent scheme takes and holds in trust for the victim, in whom *superior equitable title vested* and equitable interest in the funds is superior to the bare legal title of the wrongdoer.), *emphasis added*; *Hall v. Miller*, 147 S.W.2d 266, 270 (Tex. Civ. App.—San Antonio 1941, writ dism'd judgm't cor.).  As such, Cash Flow never lost its property interest in the funds which were transferred to Bishop and at all times held superior title to Bishop.  As can be traced through the Bishop Bank Records and admitted by the United States, the money wired from Cash Flow represents the funds used to purchase the 2901 Palo Verde Property, and the

---

[20] Exhibit O, Paragraph III. Conclusion; See also Exhibit U, United States of America's Responses to Claimant's First Requests for Admissions, No. 4.

proceeds of the subsequent sale of that property are the Respondent Property in this matter.  See **Exhibit T**.[21]

Additionally and as further evidence of the Claimant's superior interest in the Respondent Property, the Final Judgment in the Bishop Case was used to create a valid judgment lien as filed in the Receiver's Abstract of Judgment.  See **Exhibit Q**.  Under Texas law, an abstract of judgment constitutes a lien on and attaches to any real property of the defendant that is located in the county in which the abstract is recorded and indexed.  Tex. Prop. Code Ann. § 52.001 (Vernon).  However, the judicial lien created by a judgment does not fix an ownership interest when the filing party has an equitable interest by virtue of another's fraud, rather the judicial lien recognizes and is co-extensive with the injured parties' existing interest in the property.  *In re Gamble-Ledbetter*, 419 B.R. at 701.

Cash Flow was without knowledge of the acts giving rise to the forfeiture.  The corporate entity did not know or have reason to know that Bishop was perpetuating a fraud and that the entity was to become a victim of Bishop's actions. See **Exhibit O**.[22]  The entity was reasonable in relying upon the representations made by Bishop. See **Exhibit O**.[23]  Therefore, Cash Flow, through Phillip S. Stenger, the Court-appointed Receiver, held a legal right, title, and interest superior to any right title or interest of Bishop in the Respondent Property.

---

[21] Expert Report of Alice T. Romsek, C.P.A., IV. Statement of Opinion.
[22] Exhibit G, Paragraph II. Conclusions of Law, (4) Reliance.
[23] Exhibit G, Paragraph II. Conclusions of Law, (4) Reliance.

254384

# V.
# CONCLUSION

Claimant has demonstrated that there is no genuine issue of material fact that Phillip S. Stenger, as Court-appointed Receiver for Cash Flow Financial, LLC, had legal right, title, or interest in the Respondent Property, by virtue of its equitable title under Texas law, superior to any right, title or interest of Bishop at the time of the acts which gave rise to the forfeiture pursuant 21 U.S.C. §853 and as such is entitled to the return of the Respondent Property. Consequently, the Court should grant Claimant's Motion for Summary Judgment, and further order the United States to return the Respondent Property to the Receiver by amending the Preliminary Order of Forfeiture, and grant any further relief at law or in equity to which the Receiver may show himself entitled.

By: _____/s/ Aaron M. Dorfner_____
**Aaron M. Dorfner**
State Bar No. 24040824
adorfner@cbtd.com

**COTTON, BLEDSOE, TIGHE & DAWSON, P.C.**
A Professional Corporation
P. O. Box 2776
Midland, Texas 79702
(432) 684-5782
(432) 682-3672 (Fax)

ATTORNEY FOR CLAIMANT,
PHILLIP S. STENGER,
As Court Appointed Receiver for
CASH FLOW FINANCIAL, LLC

254384

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of December, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Diana Cruz-Zapata
Assistant United States Attorney
Chief Asset Forfeiture Section

And I hereby certify that I have mailed by certified mail, return receipt requested the foregoing document to the following non-CM/ECF participants:

Darlene Bishop
2012 Beverly Street
Odessa, Texas 79761


  /s/ Aaron M. Dorfner
**Aaron M. Dorfner**

16

254384